[Civ. No. 1840.   Fourth Appellate District.—May 12, 1937.]

LEONARD McCLINTOCK, Appellant, v. STANLEY ABEL, Respondent.

Matthew S. Platz for Appellant.

Harvey, Johnson & Baker, J. O. Reavis, Frederick E. Hoar and Borton, Petrini & Conron for Respondent.

MARKS, J.—This is an appeal from a judgment entered in favor of defendant in an action instituted to try his right to the office of supervisor of Kern County to which he had been declared elected in the primary election held in August, 1936.

Plaintiff and defendant were the only candidates for the office of supervisor whose names appeared on the ballot in the primary election. After the canvass of the returns by the board of supervisors it appeared that defendant had received a majority of all the votes cast for that office. On September 8, 1936, a certificate of election was issued to him. On October 7, 1936, plaintiff filed his contest of election. Defendant filed a demurrer and answer on October 16, 1936. The demurrer was sustained without leave to amend on October 21, 1936. Judgment was rendered and entered and notice of entry of judgment given on the same day. Notice of appeal was given on December 19, 1936.

Defendant has moved to dismiss the appeal on the ground that the notice of appeal was filed after the time allowed by law. The motion to dismiss and the appeal on its merits were argued and submitted at the same time and are now before us for decision. As the same question is involved in each we will consider the motion to dismiss with the appeal on its merits.

Plaintiff contends that the provisions of sections 1111 to 1127, inclusive, of the Code of Civil Procedure govern here. Defendant maintains that the provisions of sections 28 and 28a

of the Direct Primary Law (Stats. 1913, p. 1379, as amended; Stats. 1917, p. 1341, and Stats. 1933, p. 367), are controlling. If the position of plaintiff is correct the contest was filed and the appeal was taken in time. (Secs. 1115, 1126, Code Civ. Proc.; Stats. 1909, pp. 718 and 975.) On the other hand, if we agree with defendant that the provisions of sections 28 and 28a of the Direct Primary Law are controlling, the contest was filed too late and the notice of appeal was given after the time for appeal had expired.

It is unnecessary for us to determine whether any or all of the provisions of section 28 of the Direct Primary Law were repealed by the later enactment of section 28a of that law. As the provisions of section 28a more nearly support the position of defendant than those of section 28 we will not particularly concern ourselves with that section except in so far as a general reference to it may be necessary.

The Direct Primary Law as originally enacted provided for the nomination of candidates for partisan and nonpartisan offices by direct vote of the electors. As the office of supervisor is a nonpartisan office we will only concern ourselves with that portion of the Direct Primary Law which relates to such offices. In the instant case there was but one office to be filled and but two candidates for that office whose names were on the primary election ballot. We will, therefore, confine ourselves to a consideration of such a situation, and anything we may say should not be construed as applying to any other.

Section 23 of the Direct Primary Law of 1913 provided that in case one candidate received a majority of all of the votes cast in the primary for all candidates for such office, such majority candidate would be the only candidate for such office whose name would appear on the ballot at the ensuing general election. Except for amendments unimportant here, that rule has not been changed in the Direct Primary Law. (Stats. 1933, p. 367.) It is clear that the purpose of the Direct Primary Law is to provide machinery for the selection of candidates to be voted for in the ensuing general election. To that extent, and in so far as it appears from that law itself and no other, an election held pursuant to its provisions is a primary and not a general election. The election of a candidate to office is not contemplated by that act.

On November 2, 1926, the people of the state adopted section 2¾ of article II of the Constitution which provides in part as follows:

"Any candidate for a judicial, school, county, township, or other nonpartisan office who at a primary election shall receive votes on a majority of all the ballots cast for candidates for the office for which such candidate seeks nomination, shall be elected to such office."

While the precise question we are considering is one of first impression, the cases of *Kerr* v. *Russell,* 209 Cal. 36 [285 Pac. 311], and *DeWoody* v. *Belding,* 210 Cal. 461 [292 Pac. 265], are of considerable assistance in solving the problem.

In the Kerr case the question involved was that of the election of the district attorney and a supervisor of Los Angeles County at the primary election held in August, 1928. Each was a majority candidate at the primary election and a certificate of election was issued to each. Neither name appeared on the ballot at the ensuing general election. The question involved was whether the primary election for the nomination of candidates became a general election for a candidate receiving a majority of all the votes cast for the office which he sought, under the then recent amendment to the Constitution (sec. 2¾, art. II), or whether he became a nominee and the only candidate whose name would appear on the general election ballot under the provisions of section 23 of the Primary Election Law. In deciding that question the Supreme Court said:

"It has always been the policy of our law to preserve uniformity throughout the state as to the time for the election of elective county officers. Section 2¾ of article II of the Constitution preserves that uniformity and provides for the election at the primary elections of nonpartisan county officers who receive votes on a majority of all the ballots cast for such officers. This is a general provision, is applicable throughout the state, and is self executing. . . . Consequently said section 2¾ has operated since its adoption in November, 1926, so as to provide for the election of nonpartisan county officers of Los Angeles county at the primary election, and the names of such officers so elected were not in 1928 and are not required to be placed on the ballot at the succeeding general election."

In the case of *DeWoody* v. *Belding, supra,* much the same question was involved as to the election of a supervisor of

Butte County at the August primary election. In arriving at the same conclusion as that reached in *Kerr* v. *Russell, supra,* the Supreme Court said:

"He was, therefore, elected at said primary election and if he had lived he would have been entitled to a certificate of election and, upon qualifying, to succeed himself for the full term commencing January 5, 1931, and his name would not appear on the ballot at the forthcoming general election. In legal effect the primary election was a final election so far as the two candidates for said office were concerned. The death of Meeker on September 16th did not convert the primary election into a nominating election as to either candidate, and section 25 of the Direct Primary Law (Stats. 1913, p. 1407) would have no application. That section contemplates a situation where no one of three or more candidates receives votes on a majority of all the ballots cast for candidates for the particular office. In such case there is no election, but the nomination only of the two receiving the highest number of votes. In other words, in the absence of an election under the new constitutional provision, two candidates are nominated for the office and they are the 'candidates chosen at the primary election to go on the ballot for the succeeding general election.' . . . The result of the primary election in said supervisorial district of Butte county was, therefore, that Meeker was elected, Mahon was defeated, and neither was nominated as contemplated by section 25 of the Direct Primary Law. (Stats. 1913, p. 1407.) Meeker's right to the office to which he had been elected was inchoate."

It is our conclusion that up to the time of the adoption of section 2¾ of article II of the Constitution, primary elections were held solely for the purpose of nominating candidates for offices and possessed none of the attributes of general elections. The election of officers at a primary election was not contemplated by the framers of the act or any of its amendments. Under the provisions of the Direct Primary Law as it now stands (disregarding the Constitution) no candidate can be elected to office at a primary election. The act sets up complete and comprehensive machinery for nominations but does not concern itself with elections. Sections 28 and 28a deal with contests between candidates for nomination and set up a summary procedure for judicial determination of such contests. In such cases promptness of decision

is of prime importance, for the officer charged with the duty of having the ballots printed for the general election must know the names of all the candidates which are to appear on such ballots.

Section 28a of the Direct Primary Election Law concerns itself solely with such contests between candidates for nominations for offices. That section provides in part as follows:

"Any candidate at a primary election may contest the right of another candidate for the same office by filing an affidavit . . . in the office of the clerk of the superior court of the county in which he desires to contest the right of the candidate to such nomination."

It places the following limitations on the judgment to be rendered in a contest:

"After the court has heard the proofs and allegations of the parties it must file its findings of fact and conclusions of law and immediately pronounce judgment either confirming or setting aside such nomination and decreeing contestant nominated."

It would thus appear that the contests provided for in the Direct Primary Law are between candidates for *nomination* for office only and do not contemplate the contest of the *election* of a candidate. ■ The effect of section $2\frac{3}{4}$ of article II of the Constitution has been to transmute a primary election held for the purpose of nominating candidates, into a general election of those nonpartisan officers receiving in the primary a majority of all votes cast for their respective offices. Up to the present time the legislature has not taken cognizance of this situation injected into primary elections by the constitutional amendment. The Direct Primary Law provides no machinery for the contest of the election of a majority candidate in the primary. It follows that the time limitations on instituting contests and taking appeals contained in section 28a of the Direct Primary Law apply only to a contest of a nomination in a primary election. They cannot apply to the instant case because defendant was declared elected, not merely nominated as a candidate for the office of supervisor of Kern County.

■ Section 1111 et seq. of the Code of Civil Procedure sets up legal machinery for the contest of an election to a public office. This chapter of the Code concerns itself with contests of *elections* and has nothing to do with the contest

of a *nomination* in a primary election. As we are dealing with the contest of an election of an officer to a nonpartisan office the provisions of section 1111 et seq. of the Code of Civil Procedure are controlling here.

It is provided in section 1115 of the Code of Civil Procedure that a contest of election "must be filed within thirty days after the declaration of the result of the election by the body canvassing the returns thereof, . . . ". That provision was complied with in the instant case. Section 1126 of the same code contains the following:

"Either party, aggrieved by the judgment of the court, may appeal therefrom to the district court of appeal, as in other cases of appeal thereto from superior court; . . . "

This appeal was properly taken within "sixty days from the entry of" the judgment. (Sec. 939, Code Civ. Proc.)

■ Defendant raises one further question that requires consideration. He calls attention to the fact that there are two sections 1126 in the Code of Civil Procedure. The one from which we have quoted provides for appeals in election contests to the District Courts of Appeal within sixty days from the entry of judgment. (Stats. 1909, p. 975.). The other section 1126 provides for appeals in such cases to the Supreme Court within thirty days after notice of entry of judgment. (Stats. 1907, p. 913.) Defendant urges that if this last section be given effect the notice of appeal in the instant case was filed too late and that the appeal should be dismissed. There is no merit in this contention. Section 4b of article VI of the Constitution gives District Courts of Appeal appellate jurisdiction over election contests. The appellate jurisdiction of the Supreme Court over such cases arises only after transfer to that court in the manner provided by law. (Sec. 4, art. VI, Const.) Where the Constitution fixes the jurisdiction of a court that jurisdiction cannot be changed by the legislature without authority from the people in the form of a constitutional amendment. It follows that the provisions of the section 1126 of the Code of Civil Procedure which attempt to give the Supreme Court original appellate jurisdiction over election contests cannot be given effect here as they violate the plain provisions of the Constitution.

The motion to dismiss the appeal is denied. The judgment is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 9, 1937.